UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| James Friedlander,<br><br>        Plaintiff,<br><br>v.<br><br>Edwards Lifesciences LLC,<br>Edwards Lifesciences Corporation,<br>and Matthew Borenzweig,<br><br>        Defendants. | Case No. 0:16-cv-01747 (SRN/KMM)<br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Barbara Jean Felt, Clayton D. Halunen, Kaarin S. Nelson, and Stephen M. Premo, Halunen Law, 1650 IDS Center, 80 South Eighth Street, Minneapolis, Minnesota 55402, for Plaintiff.

David P. Pearson and Reid Golden, Winthrop & Weinstine, PA, 225 South Sixth Street, Suite 3500, Minneapolis, Minnesota 55402, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

## I.    INTRODUCTION

This matter is before the Court on Defendants' Motion for Judgment on the Pleadings [Doc. No. 16]. This Memorandum Opinion and Order supplements this Court's prior Order dated September 19, 2017 [Doc. No. 63]. For the additional reasons stated below, Defendants' Motion is denied.

## II. BACKGROUND

Plaintiff James Friedlander filed a complaint in Hennepin County District Court alleging that Defendants Edwards Lifesciences LLC, Edwards Lifesciences Corporation, and Matthew Borenzweig (collectively "Defendants") fired him in violation of the Minnesota Whistleblower Act, and also that Defendant Matthew Borenzweig tortiously interfered with his contract with Edwards Lifesciences Corporation and Edward Lifesciences LLC (collectively "Edwards"). (Notice of Removal, Ex. A [Doc. No. 1-1], ("Compl."), at 6-13.)[1] Defendants removed the case to this Court based on diversity jurisdiction, and now move for judgment on the pleadings.

"In considering a motion for judgment on the pleadings, the Court must 'accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party.'" *Dryer v. Nat'l Football League*, 689 F. Supp. 2d 1113, 1115 (D. Minn. 2010) (quoting *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002)). The following statement of facts is based on the allegations in Plaintiff's complaint.

Plaintiff was employed by Edwards from August 2011 to July 2015, as Director of Corporate Accounts in Edwards' Heart Valve Therapy division. (Compl. at 7, 10.) Matthew Borenzweig was Vice President of Sales during that period, and he supervised Plaintiff. (*Id.* at 7.) In August 2014, Edwards entered into a contract with Novation, a

---

[1] All references to page numbers in this Opinion are those assigned by the CM/ECF system.

group purchasing organization for health care facilities. (*Id.*) The contract included rebates, or "price concessions," for health care facilities that met certain growth metrics. (*Id.*) Several health care facilities in the Novation group showed growth metrics that would entitle them to rebates. (*Id.* at 8.)

In a January 2015 meeting of Edwards' sales executives, "Mr. Borenzweig stated he did not want to give price concessions to facilities unless the facilities asked for it." (*Id.*) Borenzweig's plan was backed by a "growing consensus," but Plaintiff opposed it, stating that the contract with Novation required Edwards to award rebates to all facilities that qualified, regardless of whether they asked for them. (*Id.*) Borenzweig was "infuriated" by Plaintiff's opposition. (*Id.*) In March 2015, the Edwards sales executives again discussed the Novation rebates. (*Id.*) At this meeting, Plaintiff "made clear he was not on board with Edwards' plan to willfully breach the Novation contract in bad faith." (*Id.*) Borenzweig asked the President of National Accounts, Mark Schreiber, to weigh in. (*Id.*) Schreiber stated that Edwards would not issue rebates for the Novation contract to facilities who did not know that they were entitled to a rebate. (*Id.*)

Sometime in April 2015, Borenzweig asked Area Director John Tanner to fire Plaintiff. (*Id.* at 9.) Tanner refused because he saw "no legitimate grounds" to do so. (*Id.*) Tanner also openly opposed the plan to withhold rebates from some Novation facilities, and Borenzweig fired Tanner "a short time later." (*Id.*)

Before Tanner was fired, Plaintiff joined him for a lunch with colleagues during a business trip in April 2015. (*Id.*) Tanner told Plaintiff to pay for the meal because Tanner

3

had forgotten his wallet. (*Id.*) Plaintiff complied, though the cost of the meal exceeded his allowable expenses for the business trip. (*Id.* at 9-10.) When human resources questioned Plaintiff about the expense, Plaintiff explained the situation and offered to withdraw the reimbursement request. (*Id.*)

Edwards fired Plaintiff on July 17, 2015. (*Id.* at 10.) As a reason for the termination, Edwards stated that Plaintiff failed to comply with Edwards' policies relating to expenses and expense reporting, and that this was "serious misconduct" reflecting "a lack of honesty and integrity and demonstrated poor judgment." (*Id.*)

Plaintiff's Complaint alleges that Defendants violated the Minnesota Whistleblower Act by firing Plaintiff for making a good-faith report of a violation of the law. (*Id.* at 10-11 (citing Minn. Stat. § 181.932, subdiv. 1).) Plaintiff also makes a claim of tortious interference with contractual relations against Borenzweig, alleging that he "procured Plaintiff's discharge" and that his conduct was motivated by malice and bad faith. (*Id.* at 11.)

Defendants argue that they are entitled to judgment on the pleadings because Plaintiff failed to adequately plead: (1) that he was employed by Edwards; (2) that he made a good-faith report under the whistleblower statute; and (3) that his report was the cause of his termination. (Defs.' Mem. in Supp. of Mot. for J. on the Pleadings [Doc. No. 18] ("Defs.' Mem."), at 13-22.) Defendants further argue that Plaintiff's tortious interference claim should be dismissed because Plaintiff fails to plausibly allege that Borenzweig acted with actual malice. (*Id.* at 22-26.)

4

## III. DISCUSSION

### A. Standard of Review

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is governed by the same standards that govern a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Haney v. Portfolio Recovery Assocs., LLC*, 837 F.3d 918, 924 (8th Cir. 2016) (per curiam).

Rule 8(a)(2) of the Federal Rules of Civil Procedure states that a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Although the complaint need not contain "detailed factual allegations," it must plead facts sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, to survive a motion to dismiss, the plaintiff's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008) (quotations and citation omitted). Rather, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation and citation omitted). This plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court assesses plausibility by drawing "on its judicial experience and common sense." *Id.* at 679.

### B. Timeliness of Motion

Plaintiff argues that Defendants' Motion is untimely, because the motion hearing took place less than one year before the trial was scheduled to begin. (*See* Mem. of Law in Opp. to Defs.' Mot. for J. on the Pleadings [Doc. No. 32] ("Pl.'s Mem."), at 7-8.) Federal Rule of Civil Procedure 12(c) permits a defendant to move for judgment on the pleadings after the pleadings have closed, "but early enough not to delay trial." Defendants moved for judgment on the pleadings on September 12, 2016, roughly four months after removing the case to federal court. (*See* Notice of Removal [Doc. No. 1].)

"If a party engages in excessive delay before moving under Rule 12(c), the district court may refuse to hear the motion on the ground that its consideration will delay or interfere with the commencement of the trial." 5C Charles Alan Wright et al., *Federal Practice and Procedure* § 1367 (3d ed. 2017). "The determination whether the motion is a legitimate one or simply has been interposed to delay the trial is within the sound discretion of the judge." *Id.*; *see also Am. Trucking Ass'ns, Inc. v. N.Y. State Highway*, 238 F. Supp. 3d 527, 539 (S.D.N.Y. 2017) ("There is no hard-and-fast time limit on a Rule 12(c) motion under Rule 12(h)(2).").

The Court does not view Defendants' Motion as a stalling device, and it does not believe that considering the motion causes undue delay. Rather, as discussed below, Defendants' Motion raises an issue of statutory interpretation that persuaded the Court to certify the issue to the Minnesota Supreme Court. Delay of this sort, to address what could

be a dispositive argument, does not violate Rule 12(c). The Court holds that Defendants' Motion is timely.

### C. Minnesota Whistleblower Act Claim

Minnesota Statutes section 181.932, subdivision 1, provides that "[a]n employer shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee" because the employee "in good faith, reports a violation, suspected violation, or planned violation of any federal or state law or common law or rule adopted pursuant to law to an employer or to any government body or law enforcement official." Plaintiff alleges that he made a good faith report of a planned violation of the law to his employer when he voiced his opposition to Borenzweig's plan to breach the contract with Novation by withholding earned rebates. (Compl., at 11.) Plaintiff further alleges that he was fired because of this good faith report, in violation of the Minnesota Whistleblower Act. (*Id.*)

#### 1. Good Faith Report

Defendants argue that Plaintiff did not make a good-faith report of a violation of the law because, if his allegations are true, Edwards already knew about the plan to breach the contract with Novation. (Defs.' Mem., at 15.) Because his report could not have exposed an illegality, Defendants assert that Plaintiff had no whistle to blow and his conduct was not protected by the Minnesota Whistleblower Act. (*Id.* at 15-18 (citing, *inter alia*, *Obst v. Microtron, Inc.*, 614 N.W.2d 196, 202 (Minn. 2000).)

Because a recent amendment to the Minnesota Whistleblower Act left the good-faith-report element of the cause of action unclear, the Court certified a question to the

7

Minnesota Supreme Court. *Friedlander v. Edwards Lifesciences, LLC*, No. 16-cv-1747, 2016 WL 7007489, at *5 (D. Minn. Nov. 29, 2016). The Court asked the Minnesota Supreme Court to determine whether "the 2013 amendment to the Minnesota Whistleblower Act defining the term 'good faith' to mean 'conduct that does not violate section 181.932, subdivision 3' eliminate[d] the judicially created requirement that the putative whistleblower act with the purpose of 'exposing an illegality.'" *Id.* The Minnesota Supreme Court answered in the affirmative. *Friedlander v. Edwards Lifesciences, LLC*, 900 N.W.2d 162, 166 (Minn. 2017).

Plaintiff need not plead that his purpose was to expose an illegality in order to be protected by the Minnesota Whistleblower Act. *Id.* It is enough to allege that he made a report of a planned violation of the law and that the report was "not knowingly false or made with reckless disregard of the truth." *Id.* (citing Minn. Stat. §§ 181.931, subdiv. 4, 181.932, subdiv. 3). Plaintiff has alleged that Defendants' plan to withhold earned rebates was a planned breach of contract, breach of the duty of good faith and fair dealing, and breach of its fiduciary duty, and also that it violated California's Unfair Competition Law. (Compl., at 11.) He further alleged that he twice voiced opposition to the plan at meetings of Edwards' sales executives. (*Id.* at 8-9.) Plaintiff has adequately pleaded that he engaged in protected conduct under the Minnesota Whistleblower Act.

### 2. Causation

Defendants assert that Plaintiff's allegations do not raise a plausible inference of causation under the *McDonnell Douglas* burden-shifting framework that governs claims under the Minnesota Whistleblower Act. (Defs.' Mem., at 19.)

Minnesota courts have adopted the *McDonnell Douglas* burden-shifting framework from federal employment discrimination law to evaluate retaliation claims under the Minnesota Whistleblower Act. *See McGrath v. TCF Bank Sav., FSB*, 509 N.W.2d 365, 366 (Minn. 1993). Under this framework, "the employee has the initial burden to establish a prima facie case, and the burden of production then shifts to the employer to articulate a legitimate, non-retaliatory reason for its action, after which the employee may demonstrate that the employer's articulated reasons are pretextual." *Cokley v. City of Otsego*, 623 N.W.2d 625, 630 (Minn. Ct. App. 2001) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). To establish a prima facie case of retaliatory discharge, the employee must show "(1) statutorily-protected conduct by the employee; (2) adverse employment action by the employer; and (3) a causal connection between the two." *Id.* (quoting *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 444 (Minn. 1983)).

Defendants argue that Plaintiff does not plead enough facts to plausibly allege his prima facie case of retaliatory discharge because his allegations do not give rise to the inference that there was a causal connection between his protected conduct and his discharge. (Defs.' Mem., at 19-22.) But "[t]he prima facie standard is an evidentiary standard, not a pleading standard." *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016)

9

(quoting *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013)). In *Swierkiewicz v. Sorema N. A.*, the Supreme Court made clear that employment discrimination claims do not carry a heightened pleading standard. 534 U.S. 506, 510-11, 515 (2002). Thus, it is not necessary to plead facts sufficient to establish a prima facie case at the pleading stage. *Blomker*, 831 F.3d at 1056 (citing *Rodriguez-Reyes*, 711 F.3d at 54); *see also Njaka v. Wright Cty.*, 560 F. Supp. 2d 746, 751 (D. Minn. 2008) ("[T]o survive a motion to dismiss under Rule 12(b)(6), a plaintiff need not even plead a *prima facie* case.").

Instead, the elements of the prima facie case are "part of the background against which a plausibility determination should be made," and "may be used as a prism to shed light upon the plausibility of the claim." *Blomker*, 831 F.3d at 1056 (quoting *Rodriguez-Reyes*, 711 F.3d at 54).

Defendants argue that Plaintiff's complaint relies on little more than temporal proximity to allege that he was discharged because of protected conduct, and that too much time passed between Plaintiff's alleged good-faith report and his discharge for the Court to infer that the two were causally connected. (Defs.' Mem., at 19-20.) Further, Defendants argue that Plaintiff's violation of Edwards' business expense policy is an intervening event that "undermines any causal inference that a reasonable person might otherwise have drawn from temporal proximity." (*Id.* at 20 (quoting *Freeman v. Ace Tel. Ass'n*, 467 F.3d 695, 698 (8th Cir. 2006).)

But the cases that Defendants cite as support for their argument are overwhelmingly summary judgment decisions. *See, e.g.*, *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 274

(2001) (reversing appellate court's decision; affirming district court's grant of summary judgment); *Freeman*, 467 F.3d at 698 (affirming grant of summary judgment); *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir. 2002) (affirming grant of summary judgment). These decisions are of limited usefulness because they apply the *McDonnell Douglas* framework as an evidentiary standard, at the close of discovery, and not as a background against which to determine whether a pleading raises a plausible claim. *See Blomker*, 831 F.3d at 1056.

Defendants point to two cases in which a claim was dismissed for failing to allege a causal connection in the pleadings. (*See* Defs.' Reply Mem. of Law in Supp. of Mot. for J. on the Pleadings [Doc. No. 37] ("Defs.' Reply"), at 18, 21-22.) In *Sahu v. Minneapolis Community & Technical College*, the plaintiff alleged that he was given a failing grade in a screenwriting class because of his race, color, or national origin. No. 14-cv-5107, 2016 WL 310727, at *1 (D. Minn. Jan. 26, 2016). The plaintiff's complaint relied upon an email from the teacher of the course stating that his scores on class assignments did not add up to the requisite 60 points for a passing grade, when in fact plaintiff's scores added up to 61.5 points. *Id.* But the court found that the plaintiff alleged no facts in the complaint that suggested the failing grade was motivated by his race, color, or national origin. *Id.* at *2 ("To survive a motion to dismiss, Sahu must plausibly allege not just that he was treated unfairly, but that he was treated unfairly *because* of his race (or color, or national origin, or religion, or age).").

The other case Defendants point to is *Clemons v. MRCI WorkSource*, No. A13-1994, 2014 WL 2178938 (Minn. Ct. App. May 27, 2014). In *Clemons*, the plaintiff worked as a driver for MRCI WorkSource, which provided employment and day services to disadvantaged and disabled individuals. *Id.* at *1. The plaintiff alleged that MRCI WorkSource violated the Minnesota Whistleblower Act by firing him for reporting various violations of state and federal law to MRCI representatives. *Id.* at *6. The court held that the plaintiff did not plausibly allege causation because he did not allege "a temporal connection" or "any other facts demonstrating that [MRCI WorkSource] discharged him because of these reports." *Id.* at *8. Further, the court noted that the plaintiff was fired immediately after leaving a client unattended on his bus, which was an intervening cause supporting his discharge. *Id.*

This case is distinguishable from *Sahu* and *Clemons* because Plaintiff alleges specific facts supporting the claim that he was discharged because of his protected activity. Unlike the plaintiff in *Clemons*, he does not rely on the mere fact that the protected activity happened and then the discharge happened. *See id.*, at *8. Plaintiff alleges that, approximately one month after his second report, "Borenzweig asked Tanner to fire [Plaintiff], but Tanner refused as there were no legitimate grounds to terminate [Plaintiff]." (Compl., at 9.) That one of the Defendants wanted to fire Plaintiff with "no legitimate grounds" a month after he reported a planned violation of the law—and *before* Plaintiff's expense policy violation, the event that Defendants assert actually caused Plaintiff's discharge—supports the inference that his ultimate firing was linked to that report.

Plaintiff also alleges that Edwards' stated reason for his discharge—Plaintiff's violation of the Edwards' business expense policy—is "unworthy of credence" because Plaintiff had been "told" by a superior to make the payment that violated the expense policy. (*Id.* at 9-10; *see* Pl.'s Mem., at 25-26.) Disproportionate punishment for a comparatively minor violation of company policy can support an inference of causation. *See Raddatz v. Standard Register Co.*, 31 F. Supp. 2d 1155, 1160 (D. Minn. 1999) (holding that the plaintiff's termination for a "minor" violation of company policy "could be viewed as suspect given his explanation to the company for why the violation occurred").

Finally, Plaintiff alleges that another employee, Tanner, was fired shortly after openly opposing the planned violation. (Compl., at 9.) The Complaint does not provide enough information for the Court to determine whether Tanner and Plaintiff were "similarly situated in all relevant respects." *Burciaga v. Ravago Ams. LLC*, 791 F.3d 930, 935 (8th Cir. 2015) (quoting *Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1085 (8th Cir. 2013)). But the allegation that Tanner was fired for similar conduct, weak as it is, still supports the plausibility of Plaintiff's claim. Considering all of these allegations, the Court holds that Plaintiff has plausibly pleaded that his good-faith report and his discharge were causally connected.

### 3. Employment Relationship

Defendants claim that Plaintiff has not adequately plead that Edwards Lifesciences Corporation was his employer during the relevant period.[2] (Defs.' Mem., at 13.) Because the Minnesota Whistleblower Act prohibits only certain conduct by employers, Defendant argues that Plaintiff cannot state a claim against Edwards Lifesciences Corporation. (*Id.*)

"Common sense and judicial experience counsel that pleading [an employment relationship] does not require great detail or recitation of all potentially relevant facts in order to put the defendant on notice of a plausible claim." *Hamilton v. Palm*, 621 F.3d 816, 819 (8th Cir. 2010). In *Hamilton*, the Eighth Circuit held that the plaintiff adequately pleaded an employment relationship by alleging that he was "employed" by the defendant, that the defendant provided equipment for him, "hired" him, and that he "perform[ed]" work for the defendant. *Id.*

Here, Plaintiff alleged that "Edwards hired" him, and that Plaintiff "provided executive support to Edwards' sales representatives by facilitating the negotiation and procurement of contracts." (Compl., at 7.) Plaintiff also alleged that he "worked remotely for Edwards," and described Defendant Borenzweig as "a third party to an employment relationship between Plaintiff and Edwards Lifesciences, LLC, Edwards Lifesciences Corporation, or both." (*Id.* at 7, 11.) These allegations are sufficient to place Defendants on notice that Plaintiff alleges an employment relationship with Edwards Lifesciences

---

[2] Defendants do not dispute that Edwards Lifesciences LLC did employ Plaintiff from August 2011 to July 2015. (Defs.' Reply, at 5 n.3.)

Corporation as well as Edwards Lifesciences LLC. Plaintiff's Complaint plausibly pleads that he was employed by Edwards Lifesciences Corporation.

## D. Tortious Interference Claim

Plaintiff alleges that Borenzweig tortiously interfered with his contract of employment by procuring his discharge in a manner that was "unjustified" and "motivated by malice and bad faith." (Compl., at 11.) Defendants argue that Plaintiff did not plausibly plead his tortious interference claim because he did not allege facts showing that Borenweig acted outside the scope of his employment. (Defs.' Mem., at 22-26.)

As the Minnesota Supreme Court held in *Nordling v. Northern States Power Co.*, a company's officer or agent is generally privileged to interfere with its contracts as long as his actions are within the scope of his employment. 478 N.W.2d 498, 505-07 (Minn. 1991). Thus, "a company officer, agent or employee is privileged to interfere with or cause a breach of another employee's employment contract with the company, if that person acts in good faith, whether competently or not, believing that his actions are in furtherance of the company's business." *Id.* at 507. "This privilege may be lost, however, if the defendant's actions are predominantly motivated by malice and bad faith, that is, by personal ill-will, spite, hostility, or a deliberate intent to harm the plaintiff employee." *Id.* A mere "personality conflict" between employees does not rise to the level of actual malice in a tortious interference claim. *See Peikarski v. Home Owners Sav. Bank, F.S.B.*, 956 F.2d 1484, 1496 (8th Cir. 1992).

Defendants argue that Plaintiff's Complaint contains only a rote recitation of the language in *Nordling*, and that he does not allege specific facts to support that conclusory statement. (Defs.' Mem., at 25 (quoting Compl., at 11 ("Borenzweig's conduct was motivated by malice and bad faith, personal ill will, spite, hostility, or a deliberate intent to harm Plaintiff.")).) Defendants also point to Plaintiff's allegation that his "refusal to toe the company line infuriated Mr. Borenzweig." (Compl., at 8.) If Borenzweig got Plaintiff fired for his "refusal to toe the company line," Defendants argue, then Borenzweig was clearly acting within the scope of his employment by encouraging company loyalty. (Defs.' Mem., at 25-26.)

Plaintiff has alleged facts showing more than a mere personality conflict between him and Borenzweig. Plaintiff alleges that Borenzweig was "infuriated" by Plaintiff's conduct, and that he "hated when employees 'went rogue' and exercised independent judgment." (Compl., at 8.) Plaintiff also alleges that Borenzweig sought his termination with "no legitimate grounds," despite the fact that Plaintiff "was a high performer and regularly met or exceeded Edwards' expectations of him." (*Id.* at 7, 9.) These allegations support the inference that Borenzweig acted out of hostility and ill-will toward Plaintiff when he facilitated his termination, and was not seeking in good faith to further Edwards' business. Plaintiff has plausibly pleaded that Borenzweig acted with actual malice.

Defendants' Motion for Judgment on the Pleadings thus fails. Again, because this ruling is merely supplemental, it does not alter any of the ruling set forth in the September 19, 2017 Order. Thus, the stay of discovery remains lifted, and the parties are directed to

proceed with scheduling, discovery, and settlement discussions before Magistrate Judge Menendez.

## IV. ORDER

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Judgment on the Pleadings [Doc. No. 16] is **DENIED**.

Dated:  October 5, 2017             **s/Susan Richard Nelson**
                                    SUSAN RICHARD NELSON
                                    United States District Judge